**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOSE SANTOS MIRANDA,

      Petitioner,                              3:05-cv-0264-ECR-RAM

vs.

E.K. McDANIEL, *et al.*,                    **ORDER**

      Respondents.

_____/

I.  <u>Introduction</u>

      This action is a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, by Jose Santos Miranda, a Nevada prisoner. Petitioner was convicted, after a jury trial, in Nevada's Eighth Judicial District Court, of two counts of lewdness with a minor, and one count of sexual assault upon a minor under fourteen years of age. On the two lewdness convictions, petitioner has served concurrent 3-year prison sentences; on the sexual assault conviction, petitioner is serving a sentence of life in prison with the possibility of parole. *See* Exhibits C, L (The exhibits referred to in this order were filed by respondents and are found in the record at docket #4). Petitioner's habeas corpus action is before the court with respect to its merits. The court will deny the petition. The court will also deny petitioner a certificate of appealability.

II. <u>Factual and Procedural Background</u>

At trial, petitioner's four-year-old niece testified that in September 1993, while her parents were at work and her sister was at school, and she was alone in her home with petitioner, he pulled off her pants, and touched her vagina on the outside and inside, with his hand and middle finger. Exhibit BB, pp. 3-12.

The little girl's mother, petitioner's sister, testified at trial that after she left the girl with her brother she noticed a change in her, in that she did not want to be left alone with petitioner when she went to work. Exhibit Z, pp. 48-50. Then, according to the girl's mother, the following week her daughter told her that petitioner had kissed her on the mouth and on the breasts, and had touched her vagina. *Id*. at 50-54. The girl's mother testified that her daughter told her that petitioner told her not to tell anyone about what he was doing. *Id*. at 54. The next day, the girl's mother took her to the hospital, where she was examined, and the police were notified. *Id*. at 55-56.

A doctor testified that he examined the girl and that her hymen was intact, with no tears, discharge, or active bleeding. Exhibit BB, pp. 56-59. However, the doctor testified that there was thickening on the superior part of the hymen, consistent with digital penetration. *Id*. at 58-62. The doctor testified that the thickening was deep, and was not likely caused by the child touching herself. *Id*. at 61-62.

A police officer testified about her interview of the little girl, in which the girl confirmed that petitioner had molested her. Exhibit BB, pp. 20-26.

Petitioner testified at trial. Exhibit BB, pp. 75-79. Petitioner testified that there were several days when he was alone with his niece, but that he did not touched her inappropriately. *Id*.

On March 17, 1994, the jury found petitioner guilty of all three counts against him, and he was sentenced. The judgment of conviction was entered on May 6, 1994. Exhibit C.

Petitioner appealed. On July 23, 1996, the Nevada Supreme Court dismissed his appeal. Exhibit F.

1  On June 4, 1997, petitioner filed, in the state district court, a petition for writ of
2  habeas corpus.  Exhibit G.  Counsel was appointed for petitioner.  Exhibit H.  The district court
3  denied the petition on March 13, 2001.  Exhibit M.
4  Petitioner appealed from the denial of his state-court habeas petition.  The Nevada
5  Supreme Court affirmed on March 29, 2002.  Exhibit R.
6  Petitioner then sought federal habeas corpus relief in this court.  He initiated this case,
7  *pro se*, under the number 3:02-cv-00284-ECR-RAM, on May 8, 2002.  The habeas petition was filed
8  on October 11, 2002, after the matter of the payment of the filing fee was resolved.  *See* Petition for
9  Writ of Habeas Corpus, docket #8 in Case Number 3:02-cv-00284-ECR-RAM.
10  On February 24, 2003, respondents filed a motion to dismiss (docket #16 in
11  Case Number 3:02-cv-00284-ECR-RAM), arguing that the habeas petition included claims not
12  exhausted in state court.  The ruled on that motion on September 17, 2003, concluding that the
13  petition did include unexhausted claims; the court gave petitioner the option of either abandoning the
14  unexhausted claims or having the case dismissed, without prejudice and without entry of judgment,
15  and subject to reopening, so that he could return to state court to exhaust claims without threat of a
16  limitations bar (docket #21 in Case Number 3:02-cv-00284-ECR-RAM).  Petitioner chose to return
17  to state court.
18  On October 24, 2003, petitioner filed a second state-court habeas petition.  Exhibit S.
19  That petition was dismissed on procedural grounds on February 6, 2004.  Exhibit W.  Petitioner
20  appealed from that ruling, and the Nevada Supreme Court affirmed on August 27, 2004.  Exhibit X.
21  Petitioner then returned to federal court, and his federal habeas action was reopened,
22  and a new case number assigned: 3:05-cv-0264-ECR-RAM (docket #1).  On May 25, 2005,
23  petitioner filed an amended petition for writ of habeas corpus (docket #2).  Respondents filed an
24  answer (docket #3).  Petitioner replied (docket #5).
25  This action is now before the court on the merits of the two claims in petitioner's
26  amended habeas petition.

III. <u>Federal Habeas Corpus Standards</u>

28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the legal standard for the court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409).

      Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV. Standards Governing Claims of Ineffective Assistance of Counsel

      In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the standards by which claims of ineffective counsel are to be measured. In *Strickland*, the Court propounded a two prong test; a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

      Regarding the first prong of the test, the *Strickland* Court expressly declined to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. *Id*. Defense counsel's duties are not to be defined so exhaustively as to give rise to a "checklist for judicial evaluation ... [because] [a]ny such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id*.

      The *Strickland* Court instructed that review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the "distorting effects of hindsight." *Id.* at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] the [petitioner] must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id*. (citation omitted).

      Construing the Sixth Amendment to guarantee not effective counsel *per se*, but rather a fair proceeding with a reliable outcome, the *Strickland* Court concluded that demonstrating that

counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. In order to satisfy *Strickland's* second prong, the defendant must show that the attorney's sub-par performance prejudiced the defense. *Id*. at 691-92. The test is whether there is a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. *Id*. at 691-94. The Court defined reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The *Strickland* Court was clear that both deficient representation and prejudice are necessary showings to support an ineffectiveness claim, and the Court expressly instructed that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*. at 697.

V. Analysis

Ground 1

In Ground 1 of his amended petition, petitioner claims that his trial counsel provided ineffective assistance of counsel, in violation of his rights under the Sixth and Fourteenth Amendments, in failing to obtain a psychological or psychiatric examination of the young girl who accused him of molesting her. *See* Petition, pp. 3-13.

Petitioner cites *Marvelle v. State*, 114 Nev. 921, 966 P.2d 151 (1998), *Keeney v. State*, 109 Nev. 220, 850 P.2d 311 (1993), *Lickey v. State*, 108 Nev. 191, 827 P.2d 824 (1992), and *Washington v. State*, 96 Nev. 305, 608 P.2d 1101 (1980), as the authority under which his counsel should have sought the psychological examination. It is plain, however, that a motion for a psychological examination of the child victim in this case, based upon those state-law authorities, would have been unsuccessful.

On the appeal from the denial of petitioner's first state-court habeas petition, the Nevada Supreme Court ruled as follows on this claim:

6

> We established the test for determining when a court should order a psychiatric examination of a sexual assault victim in *Koerschner v. State* [116 Nev. 1111, 1116, 13 P.2d 451, 455 (2000)]. In *Koerschner*, we held that the overriding consideration in determining whether to conduct a psychological examination is whether there is a compelling reason warranting such an exam. A compelling reason may be found by weighing the following factors: (1) whether the State benefits from a psychological or psychiatric expert; (2) whether there is corroborating evidence beyond the testimony of the victim; and (3) whether there is a reasonable basis for questioning the victim's veracity.
>
> Here the State did not benefit from a psychological or psychiatric expert. The victim's testimony was corroborated by the testimony of her parents, the testimony of North Las Vegas Police Officer Irene Booth, and the testimony and physical exam performed by Dr. Marc O'Connor. During a pre-trial competency hearing, the victim was extensively questioned. Throughout this questioning, the victim demonstrated that she understood the difference between the truth and a lie. There was no reason to question her mental state or veracity, other than the fact that she was four years old at the time. Given these considerations, we conclude that Miranda has failed to show a compelling reason to believe the court would have granted a motion for a psychological examination. Therefore, we conclude that Miranda's counsel was not ineffective in failing to make such a request.

Order of Affirmance, Exhibit R, pp. 1-2 (footnotes omitted). Thus, the Nevada Supreme Court has ruled that petitioner had no right, under state law, to the examination that he faults his counsel for not seeking. A state court's interpretation of its own state law is outside the scope of federal habeas review. *Pulley v. Harris*, 465 U.S. 37, 41 (1989).

In view of the Nevada Supreme Court's authoritative ruling on this keystone state-law issue, that court's rejection of petitioner's ineffective assistance of counsel claim was not contrary to, or an objectively unreasonable application of, *Strickland* or any other United States Supreme Court precedent. The Court will deny habeas corpus relief with respect to Ground 1.

Ground 2

In Ground 2, petitioner claims that his counsel was ineffective, in violation of his rights under the Sixth and Fourteenth Amendments, in failing to ensure that petitioner could fully understand the interpreters at interviews, at his preliminary hearing, and at trial. *See* Petition, pp. 15–16. Petitioner claims that the interpreters spoke too fast and too "educated." *See id*. at 15.

7

The Nevada Supreme Court ruled as follows on this claim:

> Second, Miranda argues that his counsel was ineffective in failing to ensure that Miranda could understand his Spanish-speaking interpreter. We disagree.
>
> We have held that "[a] criminal defendant has a due process right to an interpreter at all crucial stages of the criminal process." [*Ton v. State*, 110 Nev. 970, 971, 878 P.2d 986, 987 (1994).] In *Gallimore v. State*, [116 Nev. 315, 318, 997 P.2d 796, 798 (2000)], we considered three factors in determining whether a defendant received the assistance of a qualified interpreter. These factors were (1) whether the interpreter was present throughout the trial; (2) whether there were allegations or evidence that the defendant misunderstood testimony; and (3) whether the defendant was able to assist his counsel in providing a defense.
>
> Here, although it appears that there was some confusion at the beginning of Miranda's testimony, the record demonstrates that he understood his interpreter, who was present throughout the trial. Moreover, of the witnesses called by the State, two of them were the victim and her mother, both members of Miranda's family who testified in Spanish.
>
> When Miranda was asked if he heard the victim's testimony, he replied "Yes." In fact, when asked by the district court whether he had any questions, Miranda replied, "Is it necessary for me to testify, or is it enough for my attorney to speak on my defense?" Given the opportunity to speak to the court, Miranda did not give any indication that he was having difficulty with his interpreter. The record reflects that Miranda was able to consult with counsel and assist in his defense.
>
> Additionally, Miranda does not allege any specific instance where he told either the court or his counsel that he could not understand his interpreter. Miranda merely makes broad allegation in his petition. In light of the record, we find these allegations unpersuasive. Accordingly, we conclude that Miranda's counsel was not deficient and Miranda was not prejudiced by any failure of his counsel to ensure that Miranda could understand his interpreter.
>
> Finally, Miranda argues that the court erred by refusing to conduct an evidentiary hearing on the issue of whether Miranda could understand his interpreter. He contends the court should have held a hearing before his claim was denied. We disagree.
>
> We have stated that when a defendant in a petition for post-conviction relief alleges facts outside the record, which, if true, would entitle him to relief, the district court must conduct an evidentiary hearing. However, we have also stated that "[a] defendant seeking post-conviction relief cannot rely on conclusory claims for relief but must support any claims with specific factual allegations." [*Evans v. State*, 117 Nev. 609, 621, 28 P.3d 498, 507 (2001)]. A defendant "is not entitled to an evidentiary hearing if the allegations are ... repelled by the record." [*Id.*]

> Here, Miranda alleged in his petition that:
>
>> counsel failed to ensure that petitioner could understand the interpreters that were present at the trial, preliminary hearing and at all interviews and discussions with the petitioner. Petitioner did not understand the interpreters, as they spoke to [sic] fast and too educated, as petitioner only attended school until age seven (7) and does not have a working knowledge of an educated nature, wherein he could conduct a conversation such as those that were being had by counsel and the court. Moreover, petitioner could not understand what the witnesses were saying while on the witness stand because petitioner could not understand the interpreters.
>
> Miranda's allegations that he could not understand his interpreter are conclusory and belied by the record. Even if Miranda's allegations that the interpreter spoke too fast were true, appellant has provided us with no authority that these allegations alone entitle him to relief. Courtroom proceedings often occur at a quick pace. It is the responsibility of an interpreter to translate with as much accuracy as two languages will reasonably allow. In our opinion, this occurred here.

Order of Affirmance, Exhibit R, pp. 3-5 (footnotes omitted).

This court concurs, completely, with the analysis of the Nevada Supreme Court. Petitioner's claims that he could not understand the interpreter are belied by the record; a reading of the record does not disclose a single instance when the petitioner made this claim to the trial court. Moreover, petitioner's claims in this action that he could not understand his interpreter are wholly conclusory. Petitioner does not point to any particular testimony or exchange that he did not understand. Under these circumstances, petitioner's counsel was not ineffective for failing to ensure that petitioner could fully understand the interpreters.

The Nevada Supreme Court's ruling in this regard was not contrary to, or an objectively unreasonable application of, *Strickland* or any other United States Supreme Court precedent. The Court will deny habeas corpus relief with respect to Ground 2.

VI. Certificate of Appealability

The standard for issuance of a certificate of appealability calls for a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. §2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484).

The court determines that the issues raised by petitioner in this case do not satisfy the standard for issuance of a certificate of appealability. The rulings in this order are not debatable among reasonable jurists. Accordingly, the court will deny petitioner a certificate of appealability.

///
///
///
///
///

**IT IS THEREFORE ORDERED** that petitioner's Amended Petition for Writ of Habeas Corpus (docket #2) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall **ENTER JUDGMENT ACCORDINGLY.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY**.

Dated this 16th day of May, 2008.

*Edward C. Reed.*
UNITED STATES DISTRICT JUDGE